**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Old Dominion Freight Line Incorporated, et al., | No. CV-20-01292-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Kale Bowman, | |
| Defendant. | |

Before the Court are the parties' cross motions for summary judgment[1] on all claims and counterclaims, which are fully briefed.  (Docs. 16, 21, 35, 38-43.)  For the following reasons, summary judgment is granted to Plaintiffs and denied to Defendant.[2]

## I. Background

This case arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  At all relevant times, Defendant was an enrolled dependent and covered person of Plaintiffs' employee welfare benefit plan (the "Plan").  On December 8, 2017, Defendant was injured in a motorcycle accident (the "Accident").  (Doc. 1 at 3.)  The Plan paid $137,175.99 of Defendant's resulting medical expenses.  On

---

[1] The Court construes Plaintiffs' motion to dismiss Defendant's counterclaim as a motion for summary judgment pursuant to its October 13, 2020 order.  (Doc. 28.)

[2] The parties' requests for oral argument are denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion.  *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

June 6, 2018, Defendant brought a state court action against multiple third parties to recover for injuries he suffered in the Accident (the "State Action").  (*Id.*) On March 18, 2020, Defendant reached at least a partial settlement in the State Action and recovered $100,641.74. (*Id.* at 6.)  Plaintiffs then brought this lawsuit under 29 U.S.C. § 1132(a)(3) to enforce a reimbursement clause in the Plan's Summary Plan Description ("SPD"). Plaintiffs seek, *inter alia*,[3] an equitable lien over Defendant's third-party settlement funds to reimburse the Plan for the medical expenses it paid on his behalf.   Defendant counterclaimed against Plaintiffs, alleging that they failed to furnish the required plan documents and seeking statutory penalties under 29 U.S.C. § 1132(c).  The parties each filed motions for summary judgment on all claims and counterclaims, which are now ripe.

---

[3] Precisely, in their complaint Plaintiffs request the following relief:

> A. The imposition of a constructive trust or equitable lien by agreement in favor of the Plan upon the portion of the Third Party Settlement identified herein, in the amount of $137,175.99 which includes the $101,641.74 held in the Friedl Richardson trust account, the balance of $36,534.25 and assets traceable therefrom to which the Plan is entitled.
> B. For a declaration of the Plan's ownership of the Third Party Settlement up to the full amount of benefits paid to or on behalf of Kale Bowman;
> C. That the settlement funds and assets traceable therefrom be held in trust for the benefit of the Plan;
> D. For first reimbursement of not less than $137,175.99, plus any additional funds expended by the Plan on behalf of Defendants out of the Third Party Settlement;
> E. For an Order enjoining Defendants and those acting in concert with Defendants from directly or indirectly disbursing, disposing or otherwise dissipating the settlement proceeds received from third parties in payment of damages sustained by Kale Bowman, including the $101,641.74 held in trust and the balance of $36,534.25 and assets traceable therefrom over which the Plan has an equitable lien by agreement.
> F. For Plaintiffs' reasonable attorneys' fees and costs under ERISA § 502(g);
> G. For pre-judgment and post-judgment interest at the legal rate; and
> H. For such other and further relief that the Court deems just and proper.

(Doc. 1 at 10.)

## II.  Legal Standard

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits.  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute.  *Id.* at 324.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).  Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question.  *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

## III.  Discussion

### A.  Defendant's Counterclaim

Defendant asserts a counterclaim against Plaintiffs under 29 U.S.C. § 1132(c)

arising from Plaintiffs' alleged failure to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); (Doc. 12 at 19-20.)   When an administrator fails to "mail the material requested . . . within 30 days after such request," the plan administrator "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1).

Here, Defendant first requested a copy of the "instruments under which the [Plan] is established or operated" from Plaintiffs on January 18, 2018.   (Doc. 16-1 at 4.) Thereafter, Plaintiffs had 30 days to provide the requested documents.   *See* 29 U.S.C. § 1132(c)(1).   On April 26, 2018, admittedly more than 30 days following Defendant's initial request, Linda McGovern provided Defendant's attorney with, *inter alia*, the 2017 SPD, which served as the governing plan document for the reasons described in subsection B below.   (Doc. 16-1 at 8.)

Although Plaintiffs did not timely provide Defendant with a copy of the documentation under which the Plan operated, Defendant's counterclaim is barred by the one-year statute of limitations.[4]   Notably, Defendant's cause of action for penalties, if any, accrued on February 18, 2018, 30 days following his request.   *See Stone v. Travelers Corp.*, 58 F.3d 434, 439 (9th Cir. 1995) (a claim under 29 U.S.C. § 1132(c) accrues on the date of the "earliest alleged refusal to provide the requested information").   Thus, Defendant was required to file his claim no later than February 18, 2019.   Defendant's August 19, 2020 filing is therefore time-barred.   The Court will grant summary judgment to Plaintiffs on Defendant's counterclaim.

---

[4] The Ninth Circuit explained that 29 U.S.C. § 1132(c) provides a "remedy sought by an individual as compensation to address a private wrong" and therefore does not provide for a penalty or forfeiture.   *Stone v. Travelers Corp.*, 58 F.3d 434, 439 (9th Cir. 1995).   Therefore, the Ninth Circuit has applied the relevant statute of limitations for actions "upon a liability created by statute, other than a penalty or forfeiture."   *Id.*   In Arizona, the statute of limitations for an action "[u]pon a liability created by statute, other than a penalty or forfeiture" is one year.   A.R.S. § 12-541(5).

**B.  Plaintiffs' Claim for Equitable Relief Under 29 U.S.C. § 1132(a)(3)**

An ERISA plan fiduciary may bring a civil action to obtain "appropriate equitable relief" to enforce plan terms.  29 U.S.C. § 1132(a)(3).  Such relief may include an equitable lien over specifically identifiable funds that the beneficiary agreed to convey to the plan.  *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006).  To secure an equitable lien, the plan must show that (1) the beneficiary promised to reimburse the plan for benefits paid under the plan if there is subsequent recovery from a third party, (2) the agreement specifically identifies a fund, apart from the beneficiary's general assets, from which the plan will be reimbursed, and (3) the specifically identified funds are within the beneficiary's possession and control.  *Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1092-93 (9th Cir. 2012).

Two of these requirements are not in dispute.  First, the SPD's reimbursement clause states: "if a third party causes . . . Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury."  (Doc. 1-2 at 128.)  Thus, the provision identifies a specific fund distinct from Defendant's general assets from which the Plan will be reimbursed. Second, Defendant's attorney is holding $137,175.99 of the settlement funds in trust pending the outcome of this litigation and, therefore, the funds are within his possession and control. (Doc. 12 at 9.)

Instead, the dispositive question is whether Defendant promised to reimburse the Plan.  The SPD is the only disclosed document detailing the terms of the Plan, and contains provisions giving the Plan the right to reimbursement from third party recoveries.  (Doc. 1-2 at 16-.)  Defendant argues, however, that the SPD's contents do not constitute Plan terms within the meaning of ERISA and, therefore, Plaintiffs cannot enforce the reimbursement provision under § 1132(a)(3).  The Court disagrees and finds that the SPD constitutes the governing plan document and is enforceable.

An ERISA plan must "be established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  "And once a plan is established, the administrator's

duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting 29 U.S.C. § 1102(a)(1)).   To ensure that participants and beneficiaries understand the terms of their plan, the plan administrator must furnish a summary, referred to as an SPD, "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).  In this case, however, the SPD does not serve merely as a summary.  Instead, it is the only document detailing the rights and obligations of the Plan participants.

Relying on *Amara*, *Mull* and *MLK.*, Defendant argues that the SPD cannot serve as the governing plan document, because there is no evidence that the Plan adopted the SPD or incorporated the SPD as part of the Plan.  *See Cigna Corp. v. Amara*, 563 U.S 421 (2011); *Mull v. Motion Picture Industry Health Plan,* 865 F.3d 1207 (9th Cir. 2017); *Martin Luther King, Jr. Cmty. Hosp. v. Cmty. Ins. Co.*, No. 2:16-cv-03722-ODW(RAOx), 2018 WL 3830009 (C.D. Cal. 2018).  *Amara*, *Mull*, and *MLK*, however, did not involve a stand-alone SPD containing all the elements of a written instrument under 29 U.S.C. 1102(b).  Courts that have addressed such a scenario consistently have found that an SPD can serve as the governing plan document if it is the only document detailing the participants' rights and obligations and contains all necessary information.  *See e.g.*, *Bd. of Trustees v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) ("Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD, if the terms of the plan so provide."); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) ("Where no other source of benefits exists, the summary plan description is the formal plan document, regardless of its label."); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) ("Although the [SPD] contains the disclaimer that it was 'not intended to cover all details of the Plan' and that the 'actual provisions of the Plan will govern,' we reject the notion that this disclaimer renders the [SPD] a non-plan during the period when it was the only written document

describing benefits.")

Here, the SPD contains all the information required of a governing plan document. Specifically, 29 U.S.C. § 1102(b) requires that every employee benefit plan --

> **(1)** provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,
>
> **(2)** describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),
>
> **(3)** provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and
>
> **(4)** specify the basis on which payments are made to and from the plan.

Defendant does not dispute that the SPD contains all these requirements of a written instrument.[5] (Doc. 41 at 2.) In sum, the SPD is enforceable because it is the only document describing the rights and obligations of Plan participants, it contains all information required of governing plan documents, and Defendant received benefits pursuant to its terms. *See JDA Software Inc. v. Berumen*, No. CV-14-01565, 2016 WL 6143188, at * 2-3 (D. Ariz. Oct. 21, 2016).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] Instead, Defendant, relying on *Curtiss-Wright* and *Grosz-Salomon*, argues that the SPD is not enforceable because the Plan failed to abide by the protocol for amending the SPD when adopting it, pointing to the SPD's amendment provision, rather than the amendment provision of any plan document that preceded it. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995); *Gross-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001). *Curtiss-Wright* and *Gross-Salomon* both grappled with whether an amendment to an existing plan was enforceable. Here, the SPD is the only existing plan document, rendering *Curtiss-Wright* and *Gross-Salomon* distinguishable.

**IT IS ORDERED** that Plaintiffs' motions for summary judgment (Docs. 16, 40) are **GRANTED**, and Defendant's motion for summary judgment (Doc. 39) is **DENIED**. Plaintiffs are awarded $137,175.99 in reimbursement, to be paid from the third-party settlement funds deposited in the trust account of FriedlRichardson operated on behalf of Defendant. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 3rd day of August, 2021.



Douglas L. Rayes
United States District Judge